Good morning. Andrew Frisch for Andrew Zayac. It was precisely because Zayac's words were fully and effectively advised about the relationship between his perspective testimony and his defense. Judge Hall never expressed in Zayac's presence that his testimony would have been something she would have considered or changed her mind in not giving the defense the instruction on duress. Did she clearly express at the conference that you're focused on that she was making a determination that unless he testified there'd be no duress instruction? He did not say that in his presence. Absolutely not. She said that outside his presence. He said it outside of his presence. That's right. Well, what she said was, I guess I have to hear his testimony to see whether he raises duress. It was a pretty equivocal statement followed by an assertion that she'd never had a duress case before and she was going to need to do research, right? Well, I don't I don't agree with that interpretation, Judge. She said she was going to do research but before that she said that she believed that his testimony was indispensable to the to whether or not she'd give an instruction. But one way or the other... I just quoted the transcript. I guess I have to hear a testimony to see whether he raises duress. Your Honor, I the record speaks for itself. The fact of the matter is... The argument after he decided not to testify, there was a rather extensive argument as to whether a duress instruction was nevertheless appropriate. But defense counsel never said to Zayac the importance, never explained to him the importance of his testimony to whether or not the judge would charge under us. Do we know from the record or from Mr. Zayac's affidavit what, if anything, his lawyer told him long before this conference about whether he should testify and whether he would have any chance at getting a duress instruction if he did not? Here's what we know, Judge Lynch. We know that Zayac's affidavit is unrebutted. There's no rebutting affidavit from the defense lawyers in response and Judge Hall reasonably assumed that there was no discussion of that sort at all and she decided not to hold a hearing on that question. But this is what is an duty to keep your client abreast of everything that happens in the trial or is it based on the slightly different proposition, perhaps, that a defendant is entitled to be given competent advice about the pros and cons of testifying? Both. It was incumbent upon defense counsel to explain the relationship between the two things. To the extent the record is ambiguous, the appropriate remedy was to send it back for a hearing. I think it's telling in this case, in a 2255, in a murder case, that there's no rebutting affidavit from either of two lawyers and Judge Hall, in my view, reasonably assumed that there was no advice. But Judge Hall did say in the petitioner's presence, following the discussion as to whether he was going to testify, she then raises the issue of duress and says, we won't know until Mr. Zayach testifies. And then she says, or would you ask for a duress instruction even without his testimony? And then defense counsel says, probably he'd be asking regardless. And then Judge Hall doesn't rule. She says, well, we'll have to talk about it. But clearly, in his presence, she's discussing the fact that his testimony is not relevant to whether there's going to be a duress defense. JUDGE LEBEN. Judge Sullivan, I think there are portions of the record where a defense lawyer would understand the importance of Zayach testifying by virtue of what Judge Hall said. I agree with that. And it was incumbent upon defense attorney to say, defense counsel, to say, Andrew, what she's saying is, if you want to charge on duress, you need to testify or else she's not going to give it. JUSTICE SOTOMAYOR. She didn't say that. JUDGE LEBEN. She didn't say that. It was incumbent upon defense attorney, if defense attorney heard the remarks that Your Honor has read, and he understood the implication as an experienced defense attorney, it was incumbent upon him to tell Zayach, this is what she's saying, to explain to him. And the record before the Court is that he did not. JUSTICE ALITO. But, again, it seems to me from what I just read that he was present and it was clear that she hadn't decided a duress defense, nor had she decided whether the defendant's testimony was going to be an essential requirement before she would give a duress defense. JUDGE LEBEN. The record, I understand, Your Honors, and I understand Judge Lynch's point about the ambiguity of the record about the extent of the advice. I get that. But the record that Your Honor has, the record that the Court has, is that there's no discussion on that at all. We asked for a hearing on this. I believe it's telling that there's no rebutting affidavit. But, okay, have a hearing. Have the lawyers come in. Zayach would testify. JUSTICE NANCY LENOX. No discussion about what, precisely? No discussion about what Judge Hall said at that particular conference, or no discussion about the weight that his testimony, or the effect his testimony might have on the likelihood of a duress instruction? JUDGE LEBEN. The latter. No discussion about the relationship of his prospective testimony to getting a charge on duress. The record the Court has is that there's no discussion between attorney and client on that pivotal issue. JUSTICE KENNEDY. Well, when you say the record, she assumed that. And so her opinion is predicated on, even assuming that there was no discussion, there's still no constitutional violation. Is that a fair statement, the way you interpret the record? JUDGE LEBEN. I'm not sure I understand Your Honor's question. JUSTICE KENNEDY. Okay, let's start from the beginning. The actual record of what is placed before the Court as the affidavit of Mr. Zayach says nothing about what he wasn't, conspicuously, does not say, no one, we never had a discussion about the pros and cons of my testifying. And, you know, I would be, if there was something like that, I'd be prepared to consider the possibility that that, and it doesn't matter what Judge Hall says, that a competent lawyer trying to figure out, you know, what are the pros and cons of my client testifying or not. JUSTICE BREYER. Well, the record reflects that there was, I mean, there were conversations about the pros and cons of testifying, right? Mr. Zayach said to Judge Hall on the record. JUSTICE KENNEDY. On the record at the . . . JUSTICE BREYER. During the trial. JUSTICE KENNEDY. I acknowledge that, Judge. There was a discussion about . . . JUSTICE BREYER. But what a key, it seems to me a key pro in this case, regardless of whether you think you have a path to address instruction without his testimony, and you're going to argue that to the court, it seems to me a key pro is, depending on what Zayach tells the lawyer the story really is, telling that story might get you address instruction clearly, while without that testimony it's a real long shot. Now, the problem is, that all depends on what Zayach tells the lawyer he would testify to, which is something else we don't know, because what the testimony of the officers is, is that the last story they heard is the one that was reported at trial. Now, he says in his affidavit he was misquoted, but he had four lawyers there, and I don't see anything from any of those lawyers submitted to corroborate his account that that's not what I told the agents. MR. RAUMENBERG. Well, I disagree with the, if I can have a moment, Your Honor. JUSTICE SCALIA. Yes. MR. RAUMENBERG. I disagree with the last point. First of all, to the extent there's an ambiguity in the record as to what the conversations were between attorney and client, there needs to be a hearing, which is what we asked for, and there were no rebutting affidavits. Second, with regard to whether the gun was in the car, the most complete statement, the most carefully recorded statement I submit, Your Honor, was the last one. There was no proffer agreement. Zayach came in with his lawyers and answered all questions. It was a free shot for the government to ask him anything they wanted, to elicit whatever admissions they wanted, to make a record because the trial was imminent. In that statement, nothing about a gun being in the car. So I disagree with the premise of Your Honor's question. In that most complete statement, there's nothing about the gun being in the car, and that's consistent with the affidavit that Zayach submitted in support of his petition. With respect to prejudice, I mean, I guess you have to demonstrate that had he been instructed and had he testified that there would have been a duress instruction, right? Well, if the judge, if he proffered or testified that the gun was outside the car, and we can talk a little bit about the time element and the significance of that, he would have qualified for an instruction on duress. I submit to the Court most respectfully. Your Honor, again, if I can, I know I'm over time, but if I can go on. Let me just step back for a second. It is not plausible on this record for the government to have argued that Zayach intended the robbery in the first place or intended a murder in the first place. We're litigating here the elements, the ingredients of escape. The fact of the matter is, is that he met with a woman 10 minutes away. I'll be there at midnight. And he had to be at work the next morning at 6 a.m. There's no evidence of his involvement with guns or violence of any sort. And then she calls him 41 times between midnight and 2 or 3 a.m., and all the calls go into voicemail. Something unexpected happened. So we're talking about duress, not in the context of whether he lied, whether his consciousness of guilt was regards to the murder or the robbery, because that's not plausible. I think it's impossible, but it's not plausible. We're parsing the little ingredients of what it takes to get a duress instruction. And the record the Court has is that Zayach was not advised about the importance of that prospective instruction to his prospective testimony. He just wasn't told about it. And I hear Your Honor's point about that ambiguity. I noticed it in preparing for this. I think it's more bad drafting on my part than anything else, but don't take my word for it. It's a serious case. Send it back for a hearing. Thank you, Judge. May it please the Court. My name is Brian Leeming. I'm with the United States Attorney's Office for the District of Connecticut, and I'm here on behalf of the United States of America. This is not a retrial of Mr. Zayach. We're not here to decide what a jury has already decided and what this Court has already affirmed. The only issue here was whether or not the failure of the trial counsel to discuss with Mr. Zayach the interplay between the duress defense and his potential testimony was objectively unreasonable, and if it was, whether there was prejudice. I think it's important to give, as to the first issue, as to whether or not the trial counsel was objectively unreasonable, some context. It's important to note from the very beginning, from before the trial ever started, trial counsel was representing that Mr. Zayach would testify. That was the defense from the beginning. In the July 18th conference, again, that was the representation by trial counsel that Mr. Zayach would be testifying. At that time, they had submitted, trial counsel had submitted a request for a duress defense, and at that point in the trial, no evidence at all had been elicited about the circumstances that happened inside that car, about the murder of Mr. Rivera. That trial testimony came in the following day. So when the judge was inquiring, the judge had no factual basis to even understand the basis for the duress defense, hence the equivocal inquiry like, well, I guess I'll have to wait and see. What is the, it's an affirmative defense, so there must be some evidence in the must testify before I'll give that instruction. Certainly, there's nothing in the record that would indicate that. And if you put it in the context of the trial counsel telling the judge that my client's going to testify, that's the only way that evidence is going to come about, and that's the only basis for a duress defense, is through my client's testimony, the judge is like, okay, well, let's see what happens. She doesn't make a ruling. And so even though we're assuming that that conversation never occurred between trial counsel and Mr. Zayach, why would it? Because all at that point in time, he's going to testify. And so there's no reason to expect or to comprehend the significance of the duress defense under those circumstances. Fast forward two days, now the trial testimony has included the four prior statements of Mr. Zayach to law enforcement, and that testimony has come in and is now presented to the jury and to the court. And at the conclusion of the government's case, there is still a representation at that point and an expectation that Mr. Zayach will testify. But at that point, a request is made, or the judge asks, well, there's maybe something he may not testify, there's a discussion, he hasn't finally made a decision, the judge is fine, do you want the duress defense anyway? They say yes. And then in the presence of Mr. Zayach, she says, well, I guess we're going to have to talk about that because the facts are not so clear that you would be entitled to that. And again, that's in Mr. Zayach's presence. Then there's a recess. Then there's a pretty extensive colloquy between the judge and Mr. Zayach about weighing the pros and cons. He was emphatic, absolutely, I've considered them, my lawyers, we've spoken every day about the pros and cons. That is effective representation. As to his decision to testify. Yes, as to his decision to testify. We don't know what that discussion consisted of, right? Correct. So wouldn't it be important to hear from counsel about what that discussion was? Or would it not be? If not, why not? You know, would it be helpful? I'm a prosecutor. I always think the more information, the better. Of course it would be better. But it's not necessary. And it doesn't reflect on this context. Then you're sort of going down the rabbit hole about getting to ask a lawyer in an affidavit or through an evidentiary hearing, did you go over every possible strategy, every possible pro and every possible con? Because then we're making, I think, that standard much higher than the Supreme Court said it should be in Strickland, which is it's not a minimal standard, but there's a standard where there's a lot of trial strategy. And so let me sort of go to the prejudice part, which I think sort of helps it in the context. At that point in time, let's assume that Mr. Zayach would have testified as to the fifth version, which is the affidavit that he submitted in support of his 2255 motion. That would be the fifth version of events. And let's assume that for purposes of preparing your client to testify that he would have told his lawyers, this is what I would say if I was called to testify. And the lawyers are sitting there thinking, well, that's different than the one we just had with you. Well, we were all present in the room in the U.S. Attorney's Office with agents and four lawyers, and now you're going to tell the jury something different? I don't think that the rest of the defense is worth it. And I also think that... Why wouldn't it be worth it? If he's convicted, there's a mandatory life sentence, is there not? Correct, on the kidnapping and the felony murder. So... He doesn't have to worry much about obstruction of justice findings if the judge doesn't believe him. I'm not saying it in the context of that. I think it just increases the chance that the jury will reject his story, find him incredible, and be more likely to convict him. And I think... But if he doesn't get the duress instruction, you see, I mean, I think I understand the idea that if the jury was going to be asked to consider duress, then he might be better off taking his shot with whatever he told the agents and trying to explain away or rebut the government's contention that, you see, that shows he had an opportunity to escape, then affirmatively getting in front of the jury and telling a story that they're going to disbelieve, and then he's lost. But if there's not going to be any instruction to consider duress at all, or any idea that duress is a defense, that's a pretty big problem for... But the record is that Judge Hall didn't decide duress until after the decision not to testify, right? Correct. And in fact, defense counsel said, I'm going to be requesting a duress instruction regardless of whether he testifies, right? Correct. And that was all done in Mr. Zayach's presence in the courtroom. I get it, but why isn't the question here whether what the lawyer told his client about the pros and cons? Because I think, with all respect to Mr. Frisch, I mean, I understand why he wants to make this all about... He's got an affidavit that says the lawyer never told the client something arguably significant to that choice. But regardless of what Judge Hall says, and regardless of whether it's an open question, I think I'm still telling my client, look, here's what the record is now, or here's what the record is going to be about duress. Here's what you're telling me you would testify to. And again, partly because Mr. Zayach doesn't tell us, we don't know what Zayach told his lawyer during the trial was going to be the possible testimony. You know, the question is, what are the pros and cons? And all we have as a record is we talked about the pros and cons. I guess, let me ask you a legal question. Do you think that as a matter of law, the burden on a lawyer to be effective in advising the client about testifying is basically the same as what the law is with respect to whether to take a guilty plea? Because we don't have a lot of case law about... I think that Judge Hall almost says, or maybe even says, there's no obligation to give good advice about this. All that matters, all it makes for a competent lawyer is saying, you have a right to testify, it's your choice. And that's not what we say about guilty pleas, which is also the client's choice. We don't say it's good enough if the lawyer says, hey, I'm out of this, you decide whether to plead guilty or not, and then I'll implement your strategy. The lawyer has to give reasonable advice about what he thinks the client should do. Well, I think the jurisprudence about whether or not a criminal defendant opts to exercise his constitutional right to testify is given a significant deference. A defendant is entitled to reject competent, and it has to be that particular person's own decision. But is he entitled to get competent advice, whatever the content of competent advice would be in a given case? I think the standard is the same throughout the entire trial. He's entitled to effective assistance of counsel, and I think that would apply to each stage of the proceedings, whether to advise him of his right to testify or not, or to do any other aspect of the case. The case law in this is pretty darn sparse, at least from my examination of it, as to exactly what the standard of representation is. It's clear you need to advise the client, it's your choice, and you have the absolute right to do it. But once you get beyond that as to how much, how informed as to the various pros and cons and how informed you must be, we don't have a lot of cases. I agree, Your Honor, and I cited in the brief as the Sixth Circuit case Walker, which Sixth Circuit held that failure to advise the client of his evidentiary value of your potential trial testimony is not ineffective assistance of counsel. But I don't think we have a case like that, and I think it's much more problematic, and I think that's why, in fact, I I think prejudice would be the easier way to decide this case. Yes. And why is that? And that's because the defendant can't prevail in establishing that had he testified consistent with his affidavit, and had he received the duress instruction, that the outcome would have been different. Isn't it pretty clear if he testified, or maybe it's not, if he testified consistent with what he sort of outlines as his fifth account, that he would be entitled to a duress instruction, or do you disagree with that? I still disagree with that, because as this Court, not this panel, but this Court held that, based on the trial evidence, which was that Mr. Zayach, alone with the murder weapon, in the driver's seat while Gonzales was out of sight, down a hill, struggling to dispose of a 232-bounty body, no rational juror could have found that Zayach lacked a reasonable opportunity to escape. And the only real difference here is he's now saying, which the Zayach panel didn't say. No gun. He had the gun, and he shrunk the time. The other guy had the gun, and that it was 30 seconds, not two minutes. 30 seconds to 60 seconds. But the gun isn't really a significant play, because he's dragging the 232-pound lifeless body of Mr. Rivera down the hill, and he's in the car with the key ignition. As soon as he's out of sight down the hill, all he's got to do is step on the gas, and it doesn't take 30 seconds to do that. And I think the one last thing, I know my time is up, is to sort of impart about, I know we talk about how the rest defense was so pivotal. And the serious, and to your Honor's point, is that the murder, right, what has he got to lose? He's looking at life. Is that the rest was sort of a legal nuance to it. His real defense was, I didn't know he was going to do it. I didn't form the intent. I didn't intend to rob him. I did not intend to steal the marijuana from Mr. Rivera. Mr. Gonzalez pulled out a gun, unbeknownst to me, threatened Mr. Rivera, and two minutes later, he shot him. That was really the defense. And that didn't change. And it wasn't going to change with the rest defense. And it really wouldn't have affected the outcome, and the defendant, I don't think, has carried his burden. Thank you. If I could address, Judge Lynch, your question about the analogy in this situation to a guilty plea. I mean, it can't be, it can't be that a lawyer effectively represents his client or her client about the right to testify by giving a handout. Well, this is your right to testify. Read it and let me know if you have any questions. The purpose of the lawyer, the purpose of an effective counsel is to talk about the right to counsel in the context of the case that's unfolding before the lawyer and the client right then and there. And on the record, you have, the court has, there's no such advice. Judge Hall decided not to have a hearing. There's a gap in the record as to what the substance of those pros and cons were. I understand from this morning that your honors may be reluctant to reverse simply on the record as you have it, but it seems to me there should be, to fill in that gap about which the courts have expressed concern, there should be a hearing rather than speculate about it. If there's no prejudice, if we accept that he would have testified in conformity with the affidavit, you're saying that he would have gotten that rest defense, right? Yes. He would have gotten an instruction. And why is that? I mean, so what has changed? The key variables between the testimony that is in the affidavit and what the prior testimony is, there was less time than was what's in the second circuit opinion. So not two minutes, 30 seconds. And that the gun was not with your client, but was with the other guy who's dragging a 250 pound body down in the bank. I think those would give the instruction on duress. And counsel is wrong that there was discussion of the gun at that last most important conference. How long does it take to turn the ignition and hit the gas? 30 seconds? That's a fair question for the jury. One of the reasons why- Well, no, no, no. As a matter of law, courts decide these things. And so what the second circuit said in this case, where he sat for several minutes in possession of the firearm in the automobile where the other individual is not present and was in fact down in the embankment. That's not enough to justify a duress defense, right? I don't mean to trivialize the question by giving kind of a silly analogy to answer it. But one way to look at it, it's like being in the supermarket and the line next to you is going much faster than yours. And you're thinking, should I stay? Should I go? Should I stay? Should I go? And in fact, if you make the wrong decision here, you get shot. And it's not insignificant in answer to Your Honor's question that what Judge Hall says is that a reasonable person would have driven away and risked getting killed than staying and getting shot. I'm not sure how that supports the decision not to give a charge on duress, but I think it shows what a difficult factual question this is and why it should have been given to a jury just the way the court, a panel of the court in Paul, P-A-U-L cited in our papers, reversed even though the case gave a wholly implausible account of why he was entitled to a charge of duress. The judges effectively said, look, we can't assess credibility as a matter of law. This is an argument that you made the last time in front of a different panel on a direct appeal, right? I made that argument before a different panel on direct appeal. That's right. And what's new is the fact that there's this discussion in an absence of proper advice about the right to in a case Judge Sullivan predicated on inferences of Andrew's words and words that establish consciousness of guilt, which is not the strongest kind of evidence in the government's arsenal. Your Honor, to the extent you don't want to reverse, I certainly would urge the court to remand for a fact-finding hearing to fill in the gaps that the record does not answer. We'll take the matter under advisement. Very well argued, both sides. Thank you.